UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) Cause No. |
| Plaintiff, | ) 3:17-CR-00040RLY-MPB-12 |
| | ) Evansville, Indiana |
| vs. | ) **April 23,** 2019 |
| | ) 10:20 a.m. |
| BOBBY HUNTER, | ) |
| | ) |
| Defendant. | ) |

**Before the Honorable**
**RICHARD L. YOUNG**

OFFICIAL REPORTER'S TRANSCRIPT OF
SENTENCING

**For Plaintiff:**              Lauren M. Wheatley, Esq.
                             Assistant U.S. Attorney
                             United States Attorney's Office
                             101 NW Martin Luther King Blvd.
                             Evansville, IN  47708

**For Defendant:**             Barry M. Blackard, Esq.
                             Blackard & Brinkmeyer
                             512 Main Street
                             Evansville, IN  47708

Court Reporter:              Margaret A. Techert
                             United States District Court
                             101 NW Martin Luther King Blvd.
                             Evansville, Indiana  47708

PROCEEDINGS TAKEN BY MACHINE SHORTHAND
TRANSCRIPT CREATED BY COMPUTER-AIDED TRANSCRIPTION

```
 1                        (In open court.)

 2           THE CLERK:  All rise.  The United States District

 3   Court for the Southern District of Indiana is now in session

 4   pursuant to adjournment.  The Honorable Richard L. Young

 5   presiding.  Court is in session.  Please be seated.

 6           THE COURT:  Good morning.

 7           MS. WHEATLEY:  Good morning.

 8           MR. BLACKARD:  Good morning, Your Honor.

 9           THE COURT:  United States of America versus Bobby

10   Hunter, 3:17-cr-40.  Mr. Hunter is here in person in custody

11   with his attorney Barry Blackard.  United States is here by

12   Assistant United States Attorney Lauren Wheatley.

13           My record reflects on February 6, 2019, pursuant to

14   a petition to enter a plea of guilty and a plea agreement,

15   Court found an independent factual basis for the defendant's

16   plea to Count 1, conspiracy to possess with the intent to

17   distribute and distribute 500 grams or more of

18   methamphetamine, a violation of 21 U.S. Code Section 841(a)(1)

19   and 846.  Court further found the defendant's plea was

20   knowingly and voluntarily made and today's the day set for

21   sentencing.

22           Is that your understanding of the record,

23   Mr. Blackard?

24           MR. BLACKARD:  It is, Your Honor.

25           THE COURT:  Ms. Wheatley?
```

```
 1              MS. WHEATLEY:  Yes, Your Honor.

 2              THE COURT:  Mr. Blackard, would you and Mr. Hunter

 3  please take the lectern?

 4              MR. BLACKARD:  Yes, sir.

 5              THE COURT:  Mr. Hunter, we're going to review the

 6  information contained in your Presentence Investigation

 7  Report.  If at any time during this proceeding you do not

 8  understand what we're discussing or you have a question about

 9  anything, will you make sure to make your attorney aware of

10  your question so we can make our best attempt to answer that

11  for you?

12              THE DEFENDANT:  Yes, sir.

13              THE COURT:  Mr. Hunter, have you had an opportunity

14  to review the information contained in the presentence report?

15              THE DEFENDANT:  Yes, sir.

16              THE COURT:  Mr. Blackard, have you had an

17  opportunity?

18              MR. BLACKARD:  I have, Your Honor.

19              THE COURT:  Ms. Wheatley?

20              MS. WHEATLEY:  Yes, Your Honor.

21              THE COURT:  I note no objections from the

22  government, no objections from the defendant.

23              Mr. Hunter, based upon your review of the

24  Presentence Investigation Report, do you find its contents to

25  be true and accurate?
```

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  How old are you today?

3          THE DEFENDANT:  Thirty-nine.

4          THE COURT:  History of the offense is contained in

5    Part A of the presentence report.  On November 14, 2017, a

6    one-count indictment plus forfeiture was filed charging the

7    defendant and 13 co-defendants with conspiracy with the intent

8    to distribute 500 grams or more of methamphetamine.

9          Defendant was arrested on November 16, 2017, made an

10   initial appearance.  Detention hearing on November 21, 2017,

11   wherein defendant was detained.

12         January 11, 2019, petition to enter a plea of guilty

13   was filed along with the plea agreement.  This is a

14   recommended sentence pursuant to 11(c)(1)(C) of 120 months.

15         Offense conduct is listed in Paragraphs 9 through

16   13.  Parties indicating to the Court the information contained

17   in the presentence report is true and accurate.  The Court

18   will adopt the findings of the probation officer regarding the

19   offense conduct as its own findings regarding the nature and

20   circumstances of the offense; but in summary, as early as

21   October 1, 2016, Drug Enforcement Administration and the

22   Evansville Vanderburgh County Drug Task Force became aware

23   that Tommy Howard and Andrea Maddox were distributing large

24   amounts of methamphetamine in Evansville.

25         Defendant was a low-level distributor for the

organization and received crystal methamphetamine from Mark

Dow, Jr.

On October 6, 2017, the defendant and Dow discussed

the defendant obtaining a quantity of crystal methamphetamine

from Dow.  A few days later, Dow and the defendant discussed

the defendant obtaining a quantity of crystal methamphetamine

from Dow.  During the conversation, the defendant and Dow also

discussed Shampayne Brown's trip to California and that her

suitcase was missing.

A few days after that, October 16, 2017, Howard and

the defendant had a conversation wherein the defendant

provided Howard with Dow's new cell phone number.

From October 1, 2016 through November 13, 2017, the

defendant and his co-defendants distributed at least 4.5

kilograms of crystal methamphetamine in the Southern District

of Indiana.

There's no identifiable victim other than society at

large.  No information indicating the defendant impeded or

obstructed justice.

Regarding acceptance of responsibility, the

defendant was interviewed by Probation.  He admitted his

involvement in this criminal activity.  The Court will find

that he has indeed accepted personal responsibility for his

criminal conduct.

2018 guideline manual was used.  Base offense level

1  is 38 for 4.5 kilograms or more of crystal methamphetamine.

2  Since the defendant receives an adjustment under 3B1.2.  The

3  base offense level is 38.  The base offense level is 38.  The

4  base offense level is decreased by four levels.  So his

5  offense level is 34.  Adjustment for role in the offense.

6  Defendant was a minor participant in any criminal activity.

7  Decreased by two levels.

8         No Chapter 4 enhancements.  As I indicated he has

9  accepted responsibility for his criminal activity.  Pursuant

10  to 3E1.1(a), two levels are subtracted.

11         Ms. Wheatley, does the government have a 1(b)

12  motion?

13         MS. WHEATLEY:  Yes, Your Honor.  Pursuant to

14  sentencing guidelines 3E1.1(b), the government moves for one

15  additional level to be subtracted due to the defendant's

16  timely plea.

17         THE COURT:  Show that motion granted.  Total offense

18  level is 29.

19         Criminal history.  Find no juvenile adjudications.

20  Adult criminal convictions begin with arrest in 2000 for

21  possession or use of a controlled substance, a misdemeanor in

22  Toledo, Ohio.  Received a fine.  Zero criminal history points.

23         2005, operating a vehicle while intoxicated, a

24  misdemeanor in Ohio.  Again received suspended jail time.

25  Warrant was issued for a probation violation on June 16, 2005.

1   Zero criminal history points.

2           October 13, 2005, defendant was charged with dealing

3   in cocaine in Vanderburgh County, Indiana.  September 11,

4   2006, received six years Indiana Department of Correction.

5   Was paroled in December of 2008.  Released from parole in

6   December of 2010.  Pursuant to 4A1.1(a), three criminal

7   history points are assessed.

8           July of 2006, driving while license suspended, a

9   misdemeanor, Vanderburgh County; 30 days in jail.  Zero

10  criminal history points.

11          February of 2007, criminal confinement, a felony;

12  battery, a misdemeanor, in Marion County, Indiana.  March 22,

13  2007, received 545 days home detention, 365 days suspended to

14  probation.  Count 2, 365 days home detention, 287 days

15  suspended to probation concurrent.  His probation was

16  completed on October 13, 2011.  Zero criminal history points.

17          In 2012 and 2015, charged with driving while license

18  suspended, misdemeanors, Vanderburgh County.  Zero criminal

19  history points.

20          Total criminal history score is three, placing him

21  in Category II.  No other criminal conduct.

22          He does have a pending charge in Vanderburgh County.

23  It was filed on March 8, 2016.  Dealing in marijuana, a

24  felony, and maintaining a common nuisance, a felony,

25  possession of paraphernalia.  That case still remains active.

1          He does have some other arrests back in the early

2   2000's.  They were dismissed.

3          Background.  Defendant was born in January of 1980

4   in Arkansas.  His father resides in Toledo, Ohio and is

5   retired.  Mother lives in Columbus, Ohio, works in a hospital.

6   He has frequent contact with his parents.  Has four full

7   siblings.  Defendant reports frequent contact with his

8   siblings.  He has paternal half siblings.  Does not know much

9   about them or their whereabouts.

10          Reports that he lived in Arkansas until 1986.  Then

11   moved to Ohio with his family.  1996, family relocated to

12   Evansville.  1999, defendant moved to Arkansas with his mother

13   but returned to Evansville the following year.  He's lived in

14   Evansville since that time.  Parents divorced 1999.  Both

15   parents worked to provide middle income lifestyle for the

16   defendant and his siblings.  There was no alcohol or drug

17   abuse in the household.  Defendant has one child, age 13;

18   resides with maternal grandmother in Indianapolis.  He's been

19   in a relationship since 2009.

20          Physical condition.  Defendant reports to the

21   probation officer he takes medication for high blood pressure

22   and acid reflux.

23          Mental and emotional health.  Reports no current

24   mental health issues.  Never participated in any such

25   treatment.

Substance abuse history.  Defendant reports to probation first drank alcohol when he was 17.  From his 20's until November of 2017, reports drinking cognac daily when not incarcerated.  From age 18 until 2017, smoked marijuana every day when not incarcerated.  Age 25 until 2017, snorted cocaine approximately two times per month when not incarcerated.

He completed a substance abuse treatment program at the Department of Correction in 2007.  March of 2014, defendant sought treatment at Southwestern Behavioral Healthcare; diagnosed with alcohol abuse and placed in group and individual counseling.  Completed treatment in June of 2014.  Defendant is interested in substance abuse treatment available to him at the Bureau.

Education.  Defendant graduated from high school in May of 1999.  Also completed automotive service program at the Department of Correction in March of 2008.  He is interested in continuing his education in auto mechanics available to him at the Bureau.

Employment history.  In 2012, defendant resumed receiving Social Security benefits.  He received those until his arrest in this case.  Prior to that he worked in a temp agency at a factory in Evansville, and prior to that he was a cook and a dishwasher at a local restaurant.

Began receiving Social Security benefits as a child due to learning disabilities.

1          Financial condition.  Defendant reports no income as

2   he is incarcerated.  No assets.  Credit information reflects

3   utility bill, credit card account in collection and a back --

4   or overpayment due to Social Security.

5          Does not have the ability to pay a fine within the

6   guideline range.

7          Sentencing options.  Under the statute, the minimum

8   sentence is ten years in prison.  Maximum sentence is life.

9          Guideline.  Based on level 29, criminal history

10  Category II, is 97 to 121 months.  However, the statute trumps

11  the guidelines here and the statute -- statutory minimum is

12  120 months.  So the low end of the guidelines is 120 months.

13  The high end is 121 months.

14         Supervised release.  Under the statute, at least

15  five years.  Guidelines, two to five.

16         Probation.  Defendant is ineligible for probation

17  under the statute and ineligible for probation under the

18  guidelines.

19         Paragraphs 80 and 81 recite the mandatory and

20  proposed conditions of supervision.  And Mr. Hunter, have you

21  been able to read and discuss with your attorney the mandatory

22  and proposed conditions of supervision?

23         THE DEFENDANT:  Yes, sir.

24         THE COURT:  You have?  Okay.  Do you have any

25  objection to any of those conditions?

1          THE WITNESS:  No, sir.

2          THE COURT:  And Mr. Blackard, did you see any of

3    those conditions that would generate an objection or cause

4    concern?

5          MR. BLACKARD:  No, Your Honor.

6          THE COURT:  Paragraph 82 on Page 15, fines.  Under

7    the statute, maximum fine is $10 million.  Guidelines, $30,000

8    to $10 million.

9          Restitution is not an issue here.  There's no

10   identifiable victim.  No objections from the government, no

11   objections from the defendant.

12         Mr. Hunter, those are the findings of the Court

13   based on the information in the presentence report.  Do you

14   have any questions, comments, or concerns regarding the

15   findings of the Court based on that information contained in

16   the Presentence Investigation Report?

17         THE DEFENDANT:  No, sir.

18         THE COURT:  Mr. Hunter, at this stage of the

19   proceeding you have a right and an opportunity to make any

20   statement to the Court you wish regarding the issue of the

21   appropriate sentence; or for that matter, anything you wish to

22   discuss.  You can also present evidence in support of those

23   comments and you can have your attorney speak on your behalf

24   as well.

25         And of course, the government has that same right

1    and opportunity to make a statement regarding the appropriate

2    sentence and present evidence in support of those comments.

3    Do you understand this?

4              THE DEFENDANT:  Yes, sir.

5              THE COURT:  Mr. Blackard?

6              MR. BLACKARD:  Yes.  Mr. Hunter has prepared a

7    letter he would like to read to Your Honor.

8              THE COURT:  Mr. Hunter.

9              THE DEFENDANT:  First, I would like to apologize to

10   Your Honor as well as to the Court.  I also want to apologize

11   to my family and friends.  They are here supporting me in my

12   shortcoming.  I am full aware that my actions in this matter

13   were unlawful and unjustice.

14             I accept full responsibility in this matter and have

15   today a plan to seek rehabilitation so that I can obtain the

16   skills to help me cope in society as a productive citizen on

17   lives as a free man.  I ask the Court to show leniency to me

18   and my family today.

19             Again, I would like to apologize to you, Your Honor,

20   as well as to my family.  Thank you.

21             THE COURT:  All right.  Thank you, Mr. Hunter.

22   Mr. Blackard, on behalf of Mr. Hunter?

23             MR. BLACKARD:  Judge, this being a (c)(1)C plea, I

24   ask the Court to accept the agreement -- or the

25   recommendation.  It's not common for clients that I have, at

1    least my experience in both Federal Court and State Court, to

2    have this sort of family support that Mr. Hunter has here; and

3    I think it's clear to him and it's tough to him to see that

4    sort of support here and that he's let them down in a way

5    which I think he's just told Your Honor.

6            I think he has an established history of substance

7    abuse issues.  I think his mother in the PSR stated that she

8    thinks that his involvement here had a lot to do with his

9    addiction, which I would agree with.  I've gotten to know her

10   very well.  I've gotten to know Ms. Kemper very well, who

11   Bobby's been in a relationship with for many years.  So that

12   support is absolutely there.

13           I think he understands the significance and the

14   gravity of the crime he's committed here.  He's receiving a

15   very significant sentence, which I think he also understands.

16   What we would ask, Your Honor, is that based upon that

17   established history of substance abuse, that he be placed --

18   or at least the Court recommend that he be placed in the

19   Residential Drug Abuse Program at the Bureau of Prisons, the

20   500-hour program that I think that he could absolutely benefit

21   from.

22           And also he would like to be placed -- I realize

23   that the Court doesn't have a lot of discretion over this but

24   at least recommend that he be placed in a facility somewhere

25   near the Columbus, Ohio, area where his mother resides and I

1    believe where Ms. Kemper is anticipating she's going to be

2    moving to.  So I think that family support is important for

3    Bobby.  Clearly, I think it's on display today and we would

4    ask that the Court make those recommendations.

5                THE COURT:  All right.  Thank you.

6                Ms. Wheatley, on behalf of the government?

7                MS. WHEATLEY:  Thank you, Your Honor.  Your Honor,

8    looking at the factors to consider under 18 U.S.C. 3553(a), we

9    would ask Your Honor to accept the (c)(1)C plea and sentence

10   the defendant to 120 months.

11               This was a large-scale methamphetamine operation.

12   It became clear that Mr. Hunter was a minimal participant in

13   that.  However, it also became clear, and is also shown today,

14   that Mr. Hunter has never been addicted to methamphetamine.

15   Though he may have met the parties because of his addiction,

16   clearly any dealings for methamphetamine was for pure profit.

17               120 months would not only help him seek the services

18   that he needs to help his addiction to alcohol, cocaine and

19   marijuana, but it would also help him learn a trade.  It's

20   clear from the PSR that he has received some training in auto

21   mechanics and certainly he can continue that.  He is a young

22   man; and when he gets out, the government would hope that he

23   could, with the help of his family -- and clearly, he does

24   have that support -- that he could work and support his family

25   and hopefully in auto mechanics.

1      But the government believes that 120 months not only

2  reflects his involvement, his criminal history but also his

3  need for vocational and substance abuse treatment.  Thank you.

4      THE COURT:  Thank you.  The Court has reviewed the

5  Presentence Investigation Report, consulted the advisory

6  guidelines, heard comments from the defendant and from

7  counsel, now turns to 3553(a), factors to be considered in

8  imposing a sentence.  The Court shall impose a sentence

9  sufficient but not greater than necessary to comply with the

10  purposes set forth in the code.

11      Court shall consider the nature and circumstances of

12  the offense and history and characteristics of the defendant.

13  Nature and circumstances of the offense, of course, this was a

14  rather significant methamphetamine distribution conspiracy.

15  The defendant was a low-level distributor for the organization

16  and compared to others was a minor participant.  He and his

17  co-defendants are responsible for 4.5 kilograms of

18  methamphetamine that was sourced in California and transported

19  to Indiana.

20      Defendant does have a prior criminal history,

21  although it's not anywhere close to some of the criminal

22  history I've seen here before.  You do have a prior felony

23  drug conviction here and only three criminal history points;

24  and of course, your family support here is significant.

25  Mr. Blackard's correct.  Most of the folks I see who come

1  through here every day do not have anywhere close to that

2  support that you have back here today.  Many times there's no

3  one in the courtroom back in the gallery.  Sometimes maybe one

4  or two.  But you have significant family support and hopefully

5  you'll rely on that support to get you through all this; and

6  then when you get out, you need to return that support back to

7  your family by becoming a productive member of the community.

8          And you've got a good start on some auto mechanics,

9  auto technicians.  You know, you take your car to an

10  automobile shop anymore to get service and you can't get out

11  of there for less than four, five hundred dollars because auto

12  technicians get paid a lot of money now days.  It's a good

13  profession.  So hopefully you'll take advantage of those

14  vocational programs while you're in the Bureau.  Why not?  I

15  mean, they're free.

16          So when you come back out, you're still going to be

17  a relatively young man.  Someone in your generation, your life

18  expectancy, you're going to live to 90, a hundred years old.

19  So you have to figure out what you're going to do with the

20  rest of your life.  Are you going to continue to be coming in

21  and out of courtrooms or are you going to become a productive

22  member of the community, support your family?  They've been

23  here with you for all this.  So hopefully you'll some right

24  decisions.

25          There's a lot of people at the Bureau and in the

 1   community that will help you do that.  There's nothing wrong

 2   with people helping you to become productive, become

 3   successful, right?

 4             THE WITNESS:  Right.

 5             THE COURT:  There's no one in this courtroom who

 6   hasn't had help from somebody at some time, right?

 7             THE WITNESS:  Right.

 8             THE COURT:  I mean, that's what we're all about,

 9   isn't it, helping each other right?  Your family is helping

10   you out here getting you through all this.  You need to help

11   them out when you get back.  And the Court and the community

12   has plenty of resources to be able to help you do that.  So

13   make some good decisions and take advantage of that.

14             THE DEFENDANT:  I will.

15             THE COURT:  And I think you'll be good.

16             The need for the sentence imposed to reflect the

17   seriousness of the offense, promote respect for the law, and

18   provide just punishment for the offense.  I can't give you a

19   sentence any lower than 120 months.  The Congress has said for

20   this particular criminal activity and this level of drug

21   distribution, ten years is the statutory minimum sentence.

22   There's a few instances where I could go below that but they

23   do not appear here in your case.

24             You're in Federal Court.  Significant punishment is

25   what happens usually in Federal Court.  Whether I agree with

```
 1   that or not, it's not my call on this.

 2          Any in any event, 120 months will certainly reflect

 3   the seriousness of the offense, promote respect for law and

 4   provide just punishment for the offense.

 5          Also will afford adequate deterrents to criminal

 6   conduct.  Hopefully when this sentence is published, others in

 7   the community who are contemplating similar criminal activity

 8   or committing similar criminal activity will think twice

 9   before doing that.  I've been saying that for 30 years.

10   Doesn't seem to have much effect but I can always hope that

11   these sentences will deter others.

12          Protect the public from further crimes of the

13   defendant.  What makes you think I have any confidence,

14   Mr. Hunter, that once you get out, you're not going to return

15   back to this same type of conduct?

16          THE DEFENDANT:  I'm not.

17          THE COURT:  What?

18          THE DEFENDANT:  I'll be too old.

19          THE COURT:  Getting too old for that?

20          THE DEFENDANT:  Yeah.

21          THE COURT:  I would agree with that.  You know, most

22   of the folks I see come through here are in their early 20's

23   or late 20's.  Not in their 30's.  So you're getting kind of

24   tired going in and out of courtrooms?

25          THE DEFENDANT:  Yeah.
```

1          THE COURT:  That's good.  Provide the defendant with

2   needed educational, vocational training, medical care, or

3   other correctional treatment in the most effective manner.  We

4   talked about vocational training.  Very important to you.  You

5   don't appear to have any medical issues.  Appear to be

6   relatively healthy, right?

7          THE DEFENDANT:  Mm-hmm.

8          THE COURT:  So no need for incarceration for medical

9   issues or any attention paid at this time by the Bureau for

10  those medical -- any type of medical issues, but certainly

11  vocational issues and training would be important to you and

12  provided by the Bureau.  Also substance abuse treatment as

13  well.

14         And the need to avoid unwarranted sentence

15  disparities among defendants with similar records who have

16  been found guilty of similar conduct.

17         So the Court has consulted 3553(a) is now ready to

18  impose judgment and sentence.  Mr. Blackard, do you know of

19  any legal reason why the Court cannot impose judgment and

20  sentence?

21         MR. BLACKARD:  No, Your Honor.

22         THE COURT:  Ms. Wheatley?

23         MS. WHEATLEY:  No, Your Honor.

24         THE COURT:  Court enters judgment of conviction on

25  Count 1, conspiracy to possess with the intent to distribute

1   and distribute 500 grams or more of methamphetamine, a

2   violation of 21 U.S. Code Section 841(a)(1) and 846.

3          Pursuant to the Sentencing Reform Act of 1984, it is

4   the judgment of the Court the defendant Bobby Hunter is now

5   committed to the custody of the Bureau of Prisons to be

6   imprisoned for a term of 120 months.  This sentence is

7   consistent with the binding plea agreement and is the

8   mandatory minimum possible sentence in this case.

9          Court is not ordering a fine based on defendant's

10  current financial resources and future ability to pay.

11         Defendant shall forfeit to United States any

12  property which constitutes or derived from proceeds traceable

13  to the offense.

14         Supervised release is required by statute.  The

15  Court is imposing the minimum term of five years, based on the

16  nature of the instant offense, personal history and

17  characteristics of the defendant, as well as to assist his

18  reentry into the community.

19         While on supervised release, defendant shall not

20  commit another federal, state or local crime.  Shall cooperate

21  with the collection of a DNA sample, and shall refrain from

22  any unlawful use of a controlled substance, and shall submit

23  to one drug test within 15 days of placement on supervised

24  release and two periodic tests thereafter as directed by the

25  probation officer.

1        To promote respect for the law, prevent recidivism,

2   and aid in the adequate supervision, the defendant shall also

3   comply with the following conditions of supervision as

4   referenced in the presentence report.

5        Mr. Hunter, we just went over your presentence

6   report and I asked you if you were able to read and discuss

7   with your attorney the mandatory and proposed conditions of

8   supervision.

9        THE DEFENDANT:  Mm-hmm -- yes, sir.

10        THE COURT:  And you indicated to me you'd done that?

11        THE DEFENDANT:  Yes, sir.

12        THE COURT:  And you had no objection to those

13   conditions?

14        THE DEFENDANT:  No, sir.

15        THE COURT:  I can read those conditions to you or

16   you can waive my reading of those to you.

17        THE DEFENDANT:  Waive.

18        THE COURT:  Okay.  Further order the defendant pay a

19   mandatory special assessment fee of $100 due immediately,

20   payment made directly to clerk, United States District Court.

21        That is your sentence pursuant to the plea

22   agreement, Mr. Hunter.  Do you have any questions about

23   anything?

24        THE DEFENDANT:  Tell him which prison I wanted?

25        MR. BLACKARD:  I told him about the placement.

1  Can't really suggest an actual facility but I believe he'll

2  make a recommendation to get you as close to Columbus, Ohio as

3  possible.

4           THE DEFENDANT:  Okay.

5           THE COURT:  Where are you looking at, Mr. Hunter?

6           THE DEFENDANT:  Milan or Elkton.

7           THE COURT:  Milan or Elkton, Ohio?

8           THE DEFENDANT:  Mm-hmm.

9           THE COURT:  Mr. Hunter, you have a right to appeal

10 the conviction and sentence in this case.  Do you understand

11 this?

12          THE DEFENDANT:  Yes, sir.

13          THE COURT:  Remember last time we appeared in court,

14 we went over your plea agreement in great detail?

15          THE WITNESS:  Yes, sir.

16          THE COURT:  A provision of your plea agreement

17 discussed your right to appeal and it stated, in part, that in

18 exchange for concessions made to you by the United States in

19 arriving at the plea agreement, if I accepted the plea

20 agreement and sentenced you pursuant to the plea agreement,

21 then you would be giving up or waiving your right to appeal

22 the conviction and sentence in this case to a higher court.

23 Do you remember that discussion?

24          THE WITNESS:  Yes, sir.

25          THE COURT:  I have accepted the plea agreement.

1   Therefore, in my opinion -- and sentenced you pursuant to the

2   plea agreement.  Therefore, in my opinion, you've waived or

3   given up your right to appeal to a higher court.  But if you

4   disagree, discuss it with your attorney.

5              If you wish to file an appeal, you must file a

6   notice of appeal with the clerk of the Court within 14 days of

7   entry of judgment in this matter.  Do you understand this?

8              THE WITNESS:  Yes, sir.

9              THE COURT:  Court also recommends defendant be

10  housed in a Bureau of Prisons facility close to his family in

11  the state of Ohio.  Court recommends the Bureau of Prisons

12  facility at Milan or Elkton.  The Bureau believes, as does the

13  Court, that visitation is important for those incarcerated and

14  family and friends of those incarcerated, and will try to get

15  you close to those family and friends and the Court's

16  recommendation is just that, a recommendation.  They try to

17  follow our recommendation but sometimes they cannot due to

18  space limitations or security level requirements, but the

19  Bureau will do their best to get you close to your family and

20  friends.

21             Court also recommends the defendant be evaluated for

22  participation in the 500-hour Residential Drug and Substance

23  Abuse Treatment Program.  That's a program offered by the

24  Bureau.  It's a very intensive program but would be very

25  beneficial to you, not only with your substance abuse issues

1    but also if you successfully complete the program, you may

2    have some time subtracted from your sentence as well.

3            You can't just sign up for the program.  You have to

4    convince the counselors at the Bureau that you're sincere

5    about wanting to help yourself with substance abuse issues and

6    that you'll make a good faith effort to complete the program.

7    If you do, you may very well be selected for it; and as I

8    said, that would be beneficial for you on that.

9            Mr. Hunter, any questions about anything?

10            THE DEFENDANT:  No, sir.

11            THE COURT:  Mr. Blackard, anything else here today?

12            MR. BLACKARD:  No, Your Honor.

13            THE COURT:  Ms. Wheatley?

14            MS. WHEATLEY:  No, Your Honor.  Thank you.

15            THE COURT:  Mr. Hunter, you've made some bad

16    decisions here.  We all make bad decisions in our lives but

17    you've made some bad ones here and you find yourself here

18    today.  Doesn't mean your life's over.  You'll serve your

19    sentence.  You've already got some time already credited for

20    this sentence.  I don't know what the status is of his cases

21    in Vanderburgh County but I'm assuming --

22            MR. BLACKARD:  Very likely those will not be

23    pursued.  I think they're waiting for this sentencing today.

24    Yes, sir.

25            THE COURT:  Those cases will be resolved in some

1    fashion here.  Get all this behind you; and as I said,

2    hopefully you'll take advantage of people wanting to help you

3    in the Bureau and in the community and you'll be a productive

4    community member here and support your family.  As I said,

5    they're all here in support of you and you should feel good

6    about that.  And as I said, doesn't happen very that often

7    here that such good support comes out.

8           So you've got that to look forward to and hopefully

9    you'll return that support to you.  All right.  If I see you

10   again here in the courtroom, you understand it's not going to

11   be a pleasant experience, right?

12          THE DEFENDANT:  Mm-hmm.

13          THE COURT:  Because that will tell me what?

14          THE DEFENDANT:  I ain't changed.

15          THE COURT:  Tell you you ain't changed, exactly

16   right.  It means you violated your supervised release or you

17   committed another federal offense; and that will tell me, your

18   attorney, the government, and all those people back there,

19   that you haven't changed and you really don't care about it.

20   So hopefully that's not the case.

21          If I do see you, hopefully it's somewhere out in the

22   public, a restaurant or store somewhere, and you can come up

23   and say:  Hey, judge, just want to let you know I'm working

24   and supporting my family and all's good.  That's the way I

25   wanted to see you again.

1        THE WITNESS:  Okay.

2        THE COURT:  Is that fair?

3        THE DEFENDANT:  Mm-hmm.

4        THE COURT:  All right.  Good luck to you.

5        THE DEFENDANT:  Thank you.

6        THE COURT:  Show him remanded to the custody of the

7    marshal.

8        MR. BLACKARD:  Thank you, Your Honor.

9        THE CLERK:  All rise.  Court is in recess 10:50 AM.

10       (Court proceedings concluded at 10:50 a.m.)

11   ********************************************************

12                   CERTIFICATE OF COURT REPORTER

13

14    I, Margaret A. Techert, hereby certify that the

15   foregoing is a true and correct transcript from

16   reported proceedings in the above-entitled matter.

17

18

19

20   /S/ Margaret A. Techert                **December 28, 2019**
     MARGARET A. TECHERT
21   Official Court Reporter
     Southern District of Indiana
22   Evansville Division

23

24

25